IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FURHAVEN PET PRODUCTS, INC., ) | |
|     Plaintiff, ) | C.A. No. 21-342 Erie |
| ) | |
|     v. ) | District Judge Susan Paradise Baxter |
| ) | |
| CORRY AREA INDUSTRIAL ) | |
| DEVELOPMENT CORPORATION, ) | |
| et al., ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

#### A.  Relevant Procedural History

Plaintiff Furhaven Pet Products, Inc. ("Furhaven") initiated the present action on December 13, 2021, by filing a complaint against Defendants Corry Area Industrial Development Corporation ("CAIDC"), City of Corry ("Corry"), and Corry Redevelopment Authority ("CRA"). Defendant Corry was subsequently dismissed voluntarily on September 22, 2022 [ECF No. 17], and an amended complaint was filed on the same date against Defendants CAIDC and CRA, only. [ECF No. 18].

The amended complaint contains two counts of breach of contract, one against each of the two Defendants: Count I claims that Defendant CAIDC breached its Lease Agreement with Furhaven by failing to construct or pursue the construction of a 30,000 square foot addition to the leased premises, as required by a Work Letter attached as an exhibit to the Lease Agreement; Count II claims that Defendant CRA is liable for CAIDC's alleged breach of the Lease

Agreement based on a principal-agent theory of liability. Defendants filed an answer to the complaint on September 30, 2022 [ECF No. 20], and discovery ensued.

After the parties completed discovery, Defendants filed a motion to dismiss for lack of subject matter jurisdiction and/or motion for summary judgment [ECF No. 57], along with a supporting brief, a concise statement of material facts, and an appendix of exhibits [ECF Nos. 58-60, respectively]. In response, Furhaven filed a brief in opposition, an appendix of exhibits, and a responsive concise statement of material facts [ECF Nos. 61-63]. Notably, in its opposition brief, Furhaven conceded its claim against Defendant CRA, thus leaving only Count I of its amended complaint against Defendant CAIDC. Defendants subsequently filed an additional appendix [ECF No. 64] and a reply to Furhaven's opposition brief [ECF No. 65]. This matter is now ripe for consideration.

**B.** **Relevant Factual History[1]**

Furhaven is a for-profit entity engaged in the manufacturing of pet products, which it sells to large retailers and directly to consumers. (ECF No. 59, at ¶ 1). Until December 29, 2021, Furhaven was a privately-held business corporation, with all of its stock being owned by Eric Heilborn, his wife Amy Heilborn, the Eric Heilborn Family Trust, and the Amy Heilborn Family Trust (collectively, "the Heilborns"). (Id. at ¶ 3). Also, prior to December 29, 2021, Eric Heilborn ("Heilborn") was a director, officer, and full-time employee of Furhaven. (Id. at ¶ 4).

At all times relevant hereto, Defendant CAIDC owned and maintained a multi-unit industrial building located at 844 Columbus Avenue, Corry, Pennsylvania, commonly referred to

---

[1] The factual history set forth herein has been gleaned from the parties' concise statements of material facts [ECF No. 59, 63], but only to the extent such facts are undisputed and/or amply supported by the evidence of record. In addition, since Furhaven has conceded its claim against Defendant CRA, all facts related to Defendant CRA have been omitted.

as Enterprise Place. (Id. at ¶ 9). On or about January 1, 2021, Furhaven entered into a Lease Agreement with CAIDC pursuant to which Furhaven was to occupy 106,000 square feet of manufacturing space in Enterprise Place ("Leased Premises"). (Id. at ¶ 12). Under Section 3(b) of the Lease Agreement, Furhaven had the option to expand the Leased Premises by 30,000 square feet, which expansion would be contiguous with the Leased Premises and newly constructed by CAIDC. (Id. at ¶ 13). Furhaven's option to expand the Leased Premises was to be executed by written notice to CAIDC. The parties understood that the written "Work Letter" attached as Exhibit B to the Lease Agreement constituted such notice and both parties intended for the expansion to occur. (Id. at ¶ 14). None of the Heilborns was a party to the Lease Agreement and none of them has any rights under either the Lease Agreement or the Work Letter. (Id. at ¶ 19).

Paragraph 2 of the Work Letter required Furhaven and CAIDC to each "use reasonable diligence at all times in performing their respective obligations and duties under th[e] Work Letter." (Id. at ¶ 15). Neither the Lease Agreement nor the Work Letter states a deadline for completion of the 30,000 square foot expansion of the Leased Premises, nor does either contain language stating that "time is of the essence." (Id. at ¶¶ 16, 17). To complete the expansion of the Leased Premises, CAIDC engaged the services of Porter Consulting Engineering, whose services includes design of the expansion site, advertising and evaluating bids, and administration of the project through construction. (Id. at ¶ 20). The representatives and Board of Director members of CAIDC projected that the cost of constructing the expansion would and should be approximately $100 per square foot, for a total cost of $3,000,000.00. (Id. at ¶ 21).

On or about April 23, 2021, with the assistance of Ashley Porter ("Porter") of Porter Consulting Engineering, CAIDC solicited bids for construction of the 30,000 square foot

expansion, with the option to complete the project in October or November 2021. (Id. at ¶ 23). During a May 12, 2021 pre-bid conference of potential contractors, the contractors expressed concern about the feasibility of a 2021 completion given the unavailability of materials and labor, the pricing of labor and materials, and supply chain disruptions caused by the COVID pandemic. (Id. at ¶ 24). As a result, on May 17, 2021, an Addendum to the request for bids was issued which stated the option to complete the project in October 2021, November 2021, or May 2022. (Id. at ¶ 25).

At the June 9, 2021 bid opening, only one bid was received for the construction of the expansion. The bid was from Dynasty Construction in the amount of $3,800,000.00 and called for completion in May 2022, five months beyond Furhaven's preferred date and five months after the Heilborns' sale of the company. (Id. at ¶ 26). In his July 14, 2021 correspondence, Porter outlined his observations and conclusions regarding the single bid received for the expansion project, noting that the bid exceeded the anticipated budget; that labor was at high demand and short supply; that material pricing was extremely high; and that material availability was extremely limited. (Id. at ¶ 27). Based upon Porter's correspondence and subsequent discussions with him, CAIDC's Board of Directors elected not to accept the single bid received and to re-bid the expansion project in the future. (Id. at ¶ 28).

On November 18, 2021, A&M Capital Partners ("A&M") issued to Eric Heilborn a letter of intent for the purchase of Furhaven by A&M's subsidiary, Worldwise. (Id. at ¶ 34). The Heilborns' sale of Furhaven involved the transfer of all of their common stock of the company to Worldwise, which was closed on December 29, 2021. (Id. at ¶ 36). Defendants did not learn about the Heilborns' sale of all of their ownership interest in Furhaven until sometime in 2022. (Id. at ¶¶ 37, 38).

On March 11, 2022, CAIDC advertised a second request for bids with a projected completion date of December 2022; however, CAIDC was again informed that this timing was not feasible, so an addendum was subsequently issued with a projected completion date of June 2023. (Id. at ¶ 29). At the April 7, 2022 bid opening, eight (8) bids were received, and a bid of $3,465,000.00 was accepted with a completion date of June 2023. (Id. at ¶ 30). Construction of the expansion was timely completed, and the finished premises was turned over to Furhaven on June 30, 2023. (Id. at ¶ 31). Furhaven has continued to occupy the original Leased Premises, as well as the 30,000 square foot expansion space, since then.

## II.   DISCUSSION

Furhaven asserts that the delay in completing the 30,000 square foot expansion amounted to a breach of the Lease Agreement. CAIDC moves to dismiss this claim for lack of Article III standing, arguing that Furhaven has not suffered an injury in fact because the damages sought are personal to the Heilborns who lack standing to bring a claim under the Lease Agreement. Alternatively, CAIDC moves for summary judgment in its favor, arguing that Furhaven cannot establish that CAIDC failed to act with "reasonable diligence" to complete the 30,000 square foot expansion, and that the purported assignment of Furhaven's claim to Eric Heilborn is champertous and invalid, thus divesting him of any standing to prosecute this claim. These arguments will be addressed in turn.

### A.   Article III Standing

In order to establish the "irreducible constitutional minimum" of Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016 (internal citations omitted). "To establish injury

5

in fact, a plaintiff must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' ad 'actual or imminent, not conjectural or hypothetical.'" Id. at 339 (internal citations omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id. To be concrete, an injury "must actually exist" or be "real." Id. at 340.

Here, CAIDC argues that Furhaven "did not sustain lost profits… because of a delay in the completion of the building expansion" because "[t]he sales that generated such profits were, to the extent they were delayed, simply realized by Furhaven in 2022 rather than 2021." This, however, is not in dispute. Instead, Furhaven's claim is based on consequential damages in the nature of increased costs [it incurred] for temporary labor and overtime during the 4th financial quarter of 2021 amounting to $ 270,428.00. (ECF No. 61, at p. 7; ECF No. 63, at ¶ 71). According to Eric Heilborn, these damages specifically relate to additional costs allegedly sustained by Furhaven prior to the sale/transfer of the Heilborns' stock on December 29, 2021. (ECF No. 60-1, at pp. 13-18 (internal pp. 41-46)). Thus, such claimed damages are "personal" to Furhaven. And, according to Furhaven, these costs would not have been incurred if the building expansion had been completed by October 2021, as expected.[2] Whether this expectation was reasonable or even enforceable is another matter to be addressed below. However, for purposes of CAIDC's motion to dismiss based on lack of Article III standing, the Court finds that

---

[2] In this regard, CAIDC argues that "to the extent that Furhaven hired additional labor or paid overtime to workers in 2021, such costs also increased output, i.e., fulfilled booked orders either in 2021 or 2022." By this, CAIDC appears to be asserting that these costs were ultimately recovered when the orders were fulfilled and, thus, Furhaven did not actually suffer loss; however, the only evidence of record cited by CAIDC in support of this assertion is the deposition testimony of Furhaven's CFO, Michael Carr, who, at one point, testified, "Will – I don't believe the – the Furhaven Pet Products, Inc. will benefit anything from this lawsuit." (ECF No. 60-2, at p. 16 (internal p. 52)). This statement alone is insufficient to refute Furhaven's damage claim.

6

Furhaven has sufficiently set forth an injury in fact.

### B. Reasonable Diligence

Furhaven's breach of Lease Agreement is premised on its allegation that CAIDC failed to act with "reasonable diligence" to complete the 30,000 square foot expansion in accordance with the Work Letter attached as an exhibit to the Lease Agreement, which provides that "Lessor and Lessee each shall use reasonable diligence at all times in performing their respective obligations and duties under this Work Letter." (ECF No. 1-2, at p. 23, ¶ 2). It is beyond dispute that the Work Letter does not contain any terms specifying a deadline for completion of the expansion or stating that time was of the essence. (ECF No. 59, at ¶¶ 16-17). Nonetheless, Furhaven argues that "representations were made by CAIDC's Executive Director that the expansion would be completed by the 4th financial quarter of 2021" (ECF No. 61, at p. 8), and it is beyond dispute that Furhaven's claimed damages arise solely from CAIDC's failure to complete the expansion by October 2021. However, as CAIDC correctly points out, Plaintiff's reliance upon alleged representations made outside the Lease Agreement is improper due to the Lease Agreement's integration clause, which provides,

> This Lease Agreement, together with its Exhibits, constitutes the entire contract between the parties hereto and there are no other understandings, promises, representations or warranties, oral or written, relating to the subject matter of this Lease, which shall be deemed to exist or to bind any of the parties hereto, their respective heirs, executors, administrators, successors or assigns, except as set forth herein. No amendment, change or addition to the Lease shall be binding upon Lessor or Lessee unless reduced in writing and signed by both parties.

(ECF No. 1-2, at p. 20, ¶ 30).

Under Pennsylvania law, "[o]nce a writing is determined to be the parties' entire contract, the parol evidence rule applies, and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to

explain or vary the terms of the contract." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2003) (citations omitted). "An integration clause which states that a writing is meant to represent the parties' entire agreement is ... a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." Id. Thus, to the extent the alleged representations relied upon by Furhaven were made prior to execution of the Lease Agreement, evidence of the same violates the parol evidence rule and is inadmissible. Furthermore, to the extent the representations are alleged to have occurred after the Lease Agreement was executed, they are not binding upon the parties under the terms of the integration clause because they were not reduced to a writing signed by both parties. Thus, Furhaven's reliance on CAIDC's alleged representations to support its claim is without merit.

As noted earlier, despite not being bound by its alleged representations, CAIDC began soliciting bids on or about April 23, 2021, for the construction of the building expansion, with the option to complete the project in either October or November 2021. (ECF No. 59, at ¶ 23); however, during a May 12, 2021 pre-bid conference, potential contractors expressed concern about the feasibility of a 2021 completion given the unavailability of materials, unavailability of labor caused by demand in the area, pricing of labor and materials, and supply chain disruptions caused by the COVID pandemic. (Id. at ¶ 24). As a result, the request for bids was amended to provide an alternative date for completion of May 2022, in addition to the October and November 2021 options provided in the original bid request. (Id. at ¶ 25). This change resulted in a single bid to complete the expansion by May 2022, seven months beyond Furhaven's preferred date of October 2021. (Id. at ¶ 26). Based on this record evidence, Furhaven is unable to establish that the delay in completing the expansion beyond its preferred or expected date of

October 2021 resulted from CAIDC's lack of reasonable diligence. Indeed, the record evidence establishes that the circumstances contributing to the delay in construction were largely beyond CAIDC's control, as they were primarily attributable to adverse market conditions caused by the COVID-19 pandemic.[3]

Based on the foregoing, the Court finds that Furhaven's breach of contract is unsupported by the record evidence and summary judgment will be entered in favor of CAIDC and against Furhaven, accordingly.[4]

An appropriate Order follows.

---

[3] Furhaven argument that the primary cause for the delay was attributable to CAIDC's unilateral decision to fund a portion of the project with a grant from the Redevelopment Assistance Capital Program ("RACP") is unavailing. Specifically, Furhaven argues that the RACP's requirement that all structural steel be milled, melted and manufactured in the United States significantly restricted the number of bids received and "made the scheduled completion date pursuant to the bidding documents unfeasible for potential contractors." (ECF No. 61, at pp. 8-9; ECF No. 63, at ¶ 68). In support of this argument, Furhaven points to Porter's letter dated September 1, 2021, in which he notes "Further complicating the matter is the need for compliance with the Pennsylvania Steel Products Procurement Act" as required by the RACP grant (ECF No. 62-4, at p.2); however, this was merely noted as a "further complication" of other adverse market conditions that continued to exist, which Porter cites earlier in his letter. In particular, Porter notes in the same letter, "We are regularly communicating with several pre-engineered building suppliers and manufacturers as well as steel fabricators and erectors, and *we are not yet hearing of any relief or improvement in either pricing or delivery time frames*." (Id.) (emphasis added). And this was as of September 1, 2021, rendering an October 2021 completion date unfeasible.

[4] As a result, there is no need to address the validity of Furhaven's purported assignment of its claim to Eric Heilborn.